# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLOTTE JORDAN,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No.  1:11-cv-01406-LJO-SAB<br><br>**FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S SOCIAL SECURITY APPEAL BE DENIED**<br><br>OBJECTIONS DUE WITHIN 14 DAYS |

Plaintiff Charlotte Jordan ("Plaintiff") filed this action seeking judicial review of the final decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner") denying Plaintiff's claims for benefits under the Social Security Act. (ECF No. 1.) This matter was submitted to the undersigned magistrate judge for findings and recommendations pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 303.

For the reasons set forth below, the undersigned recommends that Plaintiff's social security appeal be denied.

/ / /

/ / /

/ / /

/ / /

/ / /

1

# I.

# FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff protectively applied for Social Security benefits on May 8, 2007. (AR 13.) Plaintiff's application was initially denied on January 16, 2008 and then denied upon reconsideration on March 12, 2008. (AR 13.) Plaintiff requested and received a hearing before Administrative Law Judge Charles S. Evans ("the ALJ"), which took place on September 4, 2009. (AR 13-21.) On September 29, 2009, the ALJ found that Plaintiff was not disabled. (AR 10.) The Appeals Council declined Plaintiff's request for review on June 23, 2011. (AR 1.)

### A. Plaintiff's Hearing Testimony

Plaintiff was born on May 19, 1956. (AR 27.) Plaintiff originally alleged a disability onset date of February 14, 1992, but at the end of the hearing it was amended to September 1, 2005. (AR 26, 57.) In 1992, Plaintiff was injured while working at a Safeway in Modesto, California after her foot was crushed by a 500 pound cooler door. (AR 32.) Plaintiff suffers from systemic joint pain, muscle problems, hypothyroidism, and short term memory problems. (AR 32.)

Plaintiff attended school until the 12th grade. (AR 28.) Plaintiff does not have a high school diploma. (AR 29.) Plaintiff also received vocational training as a medical assistant, for front office work and for business communications. (AR 28.)

Plaintiff worked various jobs in retail and as a medical assistant within the fifteen (15) years preceding the hearing before the ALJ. (AR 29.) When working as a medical assistant, Plaintiff lifted small babies and toddlers, as well as equipment weighing up to fifty (50) pounds. (AR 30.) When working in retail, Plaintiff lifted up to fifty (50) pounds. (AR 30.) The retail job also involved walking/standing at a fast pace. (AR 30.) Plaintiff last worked in April 2007 as a dialysis technician for three weeks. (AR 31.)

Plaintiff reported that she can sit for thirty (30) minutes at a time and stand for forty-five (45) minutes at a time. (AR 37.) Plaintiff can walk approximately five or six (5-6) city blocks

---

[1] Citations to the Social Security Administrative Transcript will be designated as "AR" (administrative record). Page numbers will refer to the page numbers as stamped and indexed in the lodged transcript. (See ECF No. 14.)

before stopping and resting.  (AR 37.)  Plaintiff can lift thirty to thirty-five (30-35) pounds, but only about ten pounds if asked to do it throughout the workday.  (AR 38.)  Plaintiff also suffers from swelling in her hands.  (AR 39.)  Plaintiff can type, but cannot close her hands for long periods of time or hold small objects.  (AR 40.)

Plaintiff reported short term memory problems, such as forgetting her zip code or difficulty remembering things in stressful situations.  (AR 38.)  Plaintiff also struggles with concentration and cannot watch a half-hour television program when she is fatigued and tired, which occurs on a daily basis.  (AR 38-39.)

Plaintiff reports that she can drive, but chooses not to because, on one occasion, she drove through a red light because she thought it was green.  (AR 41.)  Plaintiff attributed the incident to her hypothyroidism.  (AR 41.)

Plaintiff wears glasses for farsightedness.  (AR 42.)  Plaintiff did not report any problems with her hearing.  (AR 42.)

Plaintiff lives at home with her 20 year old son.  (AR 42-43.)  Both Plaintiff and her son perform household chores such as laundry, cooking and cleaning.  (AR 43.)  Plaintiff has difficulty doing household chores when her pain flares up.  (AR 43.)  Plaintiff reported that she performs chores 75 percent slower than she did before her accident in 1992.  (AR 43.)

**B.     Expert Hearing Testimony**

Dr. David Rullman, a physician board certified in internal medicine, also testified at Plaintiff's hearing before the ALJ.  (AR 44-47.)  Dr. Rullman is under contract with the Social Security Administration to testify as a medical expert witness.  (AR 44.)

Dr. Rullman opined that Plaintiff's thyroid does not relate to any of her daily experiences.  (AR 45.)  Dr. Rullman suspected that Plaintiff's joint pain may be due to osteoarthritis.  (AR 45.)  Dr. Rullman also noted that Plaintiff's "consultive examination" in February 2006 concluded that Plaintiff has no physical limitations.  (AR 45.)  Plaintiff was also seen by a psychologist in December 2007 who noted that Plaintiff, at most, had some level of depression.  (AR 45.)  There were no memory problems noted at that time.  (AR 45.)

/ / /

The records reviewed by Dr. Rullman also indicated that Plaintiff's attention was "not optimal," but was not listed as a concern in her diagnosis. (AR 46.)

Hanoch Livneh testified as a vocational expert at the hearing (hereinafter referred to as the "VE"). (AR 48-56.) The VE noted that Plaintiff's employment record was rather confusing because there were 25 jobs listed in a 15 year span and it was unclear when Plaintiff worked at these jobs. (AR 48.) However, the VE did note that most of the jobs were very short-lived. (AR 48.) Most of the jobs fell into the "light, unskilled" category. (AR 49.) Some jobs were "medium" work and others were "semi-skilled" work. (AR 49.)

The VE was asked to opine about the job prospects of an individual with the following hypothetical limitations:

- Female;
- 35 to 53 years old;
- No high school diploma or GED;
- Some medical assistant training;
- Can walk four blocks on a level surface;
- Can stand for 30 minutes at a time;
- Can sit for an hour;
- Can lift 10 pounds occasionally but not repetitively;
- Right handed;
- Has problems with carpal tunnel syndrome and arthritic swelling in the hands;
- Mildly impaired in the use of her hand;
- Can use a keyboard;
- Can climb a dozen stair steps using a handrail;
- Limited ability to drive;
- Pushing and pulling limited to office-type things, no more than 20 pounds horizontally for not more than 5 minutes at a time;
- Pain problem;
- Moderate impairment in short-term memory;

- Moderate impairment in focus and concentration; and
- Functional eyesight and hearing.

(AR 49-50.)

Given the hypothetical limitations, the VE opined that such a person could not perform any of Plaintiff's past work. (AR 51.) If the hypothetical were modified such that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, and the concentration and memory limitation were only mild, then Plaintiff could perform any of her prior jobs, with the exception of the meat wrapper job that was classified as "medium" level work. (AR 52-53.)

With respect to other jobs in the national economy, the VE opined that there were sedentary and unskilled jobs that could be performed under the more restrictive limitations set forth in the original hypothetical. (AR 53.) Specifically, the VE testified that one such job was "polisher [of] eyeglass frames." (AR 53.) About 1,100 such jobs exist locally and 120,000 exist nationally. (AR 53.) Other jobs identified by the VE included "assembler" in "electronics type of industry jobs" (3,000 positions locally, 250,000 positions nationally) and photocopying machine operator (430 positions locally, 53,000 positions nationally). The VE testified that the photocopying machine operator was classified as "light" work, but could be performed because it rarely involved lifting and carrying ten pounds or more. (AR 53.)

When questioned by Plaintiff's attorney, the VE opined that a moderate impairment in the use of her hands would have an impact on the ability to perform the work identified above. (AR 54-55.) The VE further stated that, if the hypothetical person were to miss two or more work days per month due to illness, pain, fatigue, doctor appointments or treatment, that person would not be able to sustain employment at any job. (AR 56.)

**C.  The ALJ's Findings**

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff met the insured status requirements of the Social Security Act through June 30, 2007;
- Plaintiff has not engaged in substantial gainful activity since September 1, 2005 (the amended alleged onset date);

- Plaintiff has the following severe impairments: osteoarthritis, carpal tunnel syndrome and depression;
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;
- Plaintiff has the residual functional capacity to lift and carry twenty (20) pounds occasionally and ten (10) pounds frequently.  During an eight (8) hour day, Plaintiff can sit for up to one hour at a time and stand or walk for up to thirty minutes at a time.  Plaintiff is limited to only occasional use of her hands for grasping and fine manipulation.  Plaintiff has a mild impairment of her short term memory and moderate impairment in maintaining focus and attention;
- Plaintiff is capable of performing past relevant work as a retail sales manager, a medical assistant, a customer service worker, a cashier and a file clerk;
- A substantial number of other jobs exist in the national economy which Plaintiff could perform; and
- Plaintiff has not been under a disability from September 1, 2005 through the date of the ALJ's decision.

(AR 15-21.)

## II.
## LEGAL STANDARDS FOR JUDICIAL REVIEW OF SOCIAL SECURITY DETERMINATIONS

An individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  The Court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Id. (quoting Richardson v.

Perales, 402 U.S. 389, 401 (1971)). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")

## III.
## DISCUSSION AND ANALYSIS

### A. Step Three[2] Of The Sequential Analysis (Listed Impairments)

At Step Three of the sequential analysis, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 16.) Plaintiff challenges this finding, but fails to demonstrate how the ALJ's determination was erroneous. (Pl's Opp'n 6-8.)

The ALJ's conclusion was based upon the hearing testimony offered by Dr. Rullman. Dr. Rullman testified that, in his opinion, Plaintiff did not have an impairment or combination of impairment that meets or equals those listed in the C.F.R. (AR 16, 45.) Plaintiff's attorney had the opportunity to question Dr. Rullman and failed to elicit any testimony that raises any serious doubts about Dr. Rullman's conclusion. (AR 45-47.)

Plaintiff's brief describes Plaintiff's impairments, but fails to identify any evidence that the ALJ improperly rejected or failed to consider. The Court's own review of the record failed to reveal any evidence that the ALJ improperly disregarded. Plaintiff fails to identify any legal errors committed by the ALJ and the Court is unable to find any errors in the ALJ's analysis. Accordingly, the Court concludes that the ALJ's analysis and conclusion at Step Three was proper and supported by substantial evidence.

---

[2] Since Plaintiff received favorable determinations at Step One and Step Two of the sequential analysis, there is no need for the Court to review the ALJ's determination at those steps. See Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (ALJ's error is harmless if mistake was nonprejudicial to the claimant).

### B.     Plaintiff's Residual Functional Capacity

The ALJ concluded that Plaintiff's Residual Functional Capacity ("RFC") was limited to the ability to lift and carry twenty pounds occasionally and ten pounds frequently. (AR 16.) Moreover, the ALJ determined that Plaintiff was further limited to sitting for an hour at a time, standing or walking for thirty minutes at a time and occasional use of her hands for grasping and fine manipulation. (AR 16.) With respect to Plaintiff's mental limitations, the ALJ concluded that Plaintiff suffered from mild impairment in her short term memory and moderate impairment in maintaining focus and attention. (AR 16.)

The ALJ's conclusion was based upon Plaintiff's testimony and the medical record, including opinions from physicians. (AR 16-19.) The ALJ acknowledged that, to some extent, Plaintiff testified to limitations greater than those reflected in the RFC. (AR 17.) However, the ALJ stated that Plaintiff's subjective "allegations as to the intensity, persistence and limiting effects of her symptoms are disproportionate and not supported by the objective medical findings or by any other corroborating evidence." (AR 17.)

The ALJ noted that Plaintiff's "treatment has been essentially routine and/or conservative in nature, and has been generally successful in controlling [Plaintiff's] symptoms." (AR 17.) The ALJ further noted that the office visit notes show that Plaintiff did not specify any particular complaint and made relatively infrequent trips to the doctor to address the allegedly disabling symptoms. (AR 17.) Plaintiff "often failed to comply with the medical regimen prescribed by her treating doctors, which suggests that her symptoms may not have been as serious as has been alleged." (AR 18.) Further, although Plaintiff claimed she could not afford treatment, there was no record of any attempts to visit free or low cost treatment sources. (AR 18.)

The ALJ also reasoned that the record showed that Plaintiff's impairments were present at the same level of severity prior to the alleged onset date, and the impairments did not prevent Plaintiff from working during that time. (AR 18.) Finally, the ALJ considered the fact that Plaintiff's daily activities, which included caring for herself and her son, caring for a dog, preparing simple meals, performing household chores, walking, driving, shopping, managing her finances, making flowering baskets, reading and watching television, were not limited to the

extent expected given Plaintiff's testimony. (AR 18.)

Looking at the medical evidence, the ALJ noted that on December 20, 2007, Daryl Birney, Ph.D performed a consultative psychological evaluation and assigned Plaintiff a GAF score of 65, denoting a mild, persistent difficulty in social and occupational functioning. (AR 18, 682-686.) On January 4, 2008, a psychological consultant similarly concluded that Plaintiff experienced mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence and pace, and no extended episodes of decompensation. (AR 19, 687-700.) These findings were affirmed on March 11, 2008. (AR 19, 709.)

A medical consultant reviewing the record on March 23, 2006 concluded that Plaintiff retained the RFC to lift and carry twenty pounds occasionally and ten pounds frequently, that Plaintiff could sit, stand and walk for up to six hours during an eight hour day, that Plaintiff should never use ladders, ropes or scaffolds, could only occasionally handle, finger, climb, crouch or crawl, and should avoid concentrated exposure to vibration or hazardous conditions. (AR 19, 502-520.) Additional state agency medical consultants issued similar opinions on January 4, 2008 and March 10, 2008. (AR 19, 701-708, 717-718.)

The ALJ's RFC determination was supported by every physician to opine on the matter. Plaintiff's brief describes Plaintiff's impairments, but fails to identify any evidence that the ALJ improperly rejected or failed to consider. The Court's own review of the record failed to reveal any evidence that the ALJ improperly disregarded. Plaintiff fails to identify any legal errors committed by the ALJ and the Court is unable to find any errors in the ALJ's analysis. Accordingly, the Court concludes that the ALJ's analysis and conclusion at Step Three was proper and supported by substantial evidence.

**C.    Step Four And Step Five Of The Sequential Analysis (Past Relevant Work And Any Other Work)**

The ALJ concluded that Plaintiff is capable of performing past relevant work as a retail sales manager, a medical assistant, a customer service worker, a cashier and a file clerk. (AR 19.) The ALJ's conclusion was based upon the testimony of the VE. (AR 19.)

1    The record reflects that the VE was asked to provide an opinion based upon two sets of
2 hypothetical restrictions.  In the first, more restrictive, hypothetical, the VE was asked to consider
3 a person who could walk four blocks on a level surface, stand for thirty (30) minutes at a time, sit
4 for an hour at a time, lift ten (10) pounds occasionally but not repetitively, is mildly impaired in
5 the use of her hands, has limited ability to drive, climb stairs or push and pull, and is moderately
6 impaired in concentration and short term memory (hereinafter referred to as the "First
7 Hypothetical").  (AR 49-50.)  When presented with the First Hypothetical the VE opined that
8 such a person would be unable to perform Plaintiff's past relevant work.  (AR 51-52.)

9    The ALJ then modified the hypothetical by changing the lifting and carrying requirements
10 to twenty (20) pounds occasionally and ten (10) pounds frequently and changing the moderate
11 impairments in concentration and short term memory to mild impairments in concentration and
12 short term memory (the "Second Hypothetical").  (AR 52.)  Under the Second Hypothetical, the
13 VE opined that such a person would be able to perform Plaintiff's past relevant work.  (AR 52-
14 53.)

15    The ALJ erred because the Second Hypothetical did not accurately reflect Plaintiff's
16 limitations.  See Robbins v. Social Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006) ("an ALJ is
17 not free to disregard properly supported limitations [in hypotheticals posed to a VE]."); Andrews
18 v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995) (hypothetical presented to VE must consider all of
19 the claimant's limitations).  The Second Hypothetical assumed a person that had less restrictive
20 impairments than Plaintiff's.  Specifically, Plaintiff's RFC stated that she was moderately
21 impaired in maintaining focus and attention (AR 16) whereas the Second Hypothetical presumed
22 a person who was only mildly impaired in concentration.  Accordingly, it is unclear whether the
23 VE's opinion would apply to Plaintiff.

24    However, the ALJ's error was harmless because the ALJ further developed the record and
25 determined that a substantial number of jobs existed that could be performed by a person with the
26 limitations set forth in the more restrictive First Hypothetical.[3]  See Stout v. Commissioner,

---

[3] The ALJ determined that the Medical-Vocational Rule "grids" were inapplicable because Plaintiff's impairments were not fairly represented by the grids.  (AR 20; see also Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007)

Social Sec. Admin., 454 F.3d 1050, 1054-55 (9th Cir. 2006) (harmless error applies in the Social Security context where mistake is inconsequential to the ultimate nondisability determination). The First Hypothetical assumed a person that suffered from impairments more restrictive than Plaintiff's. The VE testified that a person with the limitations set forth in the First Hypothetical could still perform work as a polisher of eyeglass frames, as an assembler in many electronics-type of industry jobs and as a photocopying machine operator. (AR 53-54.) Collectively, approximately 4,530 of these jobs were available locally and 423,000 were available nationally.[4] (AR 53-54.) Since Plaintiff's limitations were comparable to those presented in the First Hypothetical, the VE's testimony serves as substantial evidence supporting the ALJ's conclusion that Plaintiff could perform other work that existed in substantial numbers in the national economy.

Plaintiff's brief fails to challenge the ALJ's conclusion that Plaintiff could perform the work identified by the VE or otherwise challenge the ALJ's Step Five analysis. Plaintiff fails to identify any evidence that the ALJ improperly rejected or failed to consider. The Court's own review of the record failed to reveal any evidence that the ALJ improperly disregarded. Although the ALJ erred in its Step Four analysis, the error was inconsequential to the non-disability determination because, even if Plaintiff received a favorable determination at Step Four, the non-disability determination was supported by the ALJ's determination at Step Five of the sequential analysis. Accordingly, the ALJ's error was harmless and Plaintiff's non-disability determination is supported by substantial evidence.

/ / /

/ / /

---

("When the grids do not match the claimant's qualifications, the ALJ can either (1) use the grids as a framework and make a determination of what work exists that the claimant can perform … or (2) rely on a vocational expert when the claimant has significant non-exertional limitations."); Reddick v. Chater, 157 F.3d 715, 729 (9th Cir. 1998) (grids may be used only when they accurately and completely describe the claimant's abilities and limitations.)

[4] Although there is no bright-line rule within this district regarding how many jobs constitute a "significant number," Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012), the Ninth Circuit has held that 1,266 jobs available in the local economy is sufficient to constitute a "significant number," Barker v. Secretary of Health and Human Servs., 882 F.2d 1474, 1479 (9th Cir. 1989).

## IV.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, the Court finds that the ALJ's analysis is based on the proper legal standards and the ALJ's ultimate conclusion as to the question of disability is supported by substantial evidence. Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Charlotte Jordan.

These Findings and Recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **February 13, 2013**

UNITED STATES MAGISTRATE JUDGE